Filed 12/30/13  P. v. White CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SEKAYI RUDO WHITE,<br><br>    Defendant and Appellant. | G047252<br><br>(Super. Ct. No. 06HF2048)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Francisco P. Briseno, Judge.  Affirmed.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was sentenced to life in prison for committing multiple sex crimes against multiple victims. He contends instructional error tainted the jury's verdict, and one of his convictions must be reversed due to insufficient evidence. We disagree and affirm the judgment.

## FACTS[1]

In November 2006, Sarah L. met appellant at a nightclub in Costa Mesa. She was beguiled by him, and they went out three or four times without incident. In December 2006, Sarah and appellant went to a hotel and had sex together for the first time. That's when Sarah first experienced appellant's violent tendencies. While she agreed to have sexual intercourse with appellant, he became extremely abusive to her during the act.

Sarah testified she had engaged in consensual "rough sex" in the past, including "light spanking" and "light choking," but only with partners whom she trusted. She did not discuss or agree to any of that with appellant. However, while they were having intercourse, appellant punched her in the face multiple times. She told him to stop, but he hit her hard on the buttocks and continued penetrating her. He also choked her and bit her breasts during the episode, even though she was continually yelling at him to stop.

Eventually, Sarah got up, got dressed and left the room. As a result of the incident, she had bruising on her face and breasts and a hand-shaped mark on her buttocks. However, she did not go to the police at that time because she felt embarrassed. In her mind, "It started out as consensual. It definitely became nonconsensual, but it just didn't seem like with things that happened in my past that [it] needed to be [brought] to anybody's attention."

---

[1] Because appellant only challenges the sufficiency of the evidence with respect to one of his convictions, forcible rape as alleged in count eight, we will focus our facts on that particular offense.

Following the incident, Sarah cut off contact with appellant, but he continued to call her, and she eventually forgave him. She even resumed socializing with appellant and slept with him on another occasion. However, appellant became increasingly controlling and began stalking and threatening her. One day, he forced himself inside her residence and raped her at knifepoint. About a month later, Sarah learned appellant had been arrested in connection with an attack on another woman. At that point, she called the police and told them what appellant had done to her.

I

Appellant contends there is insufficient evidence to support the jury's verdict he raped Sarah the first time they had sex. While he concedes she repeatedly told him to stop while they were having intercourse, he argues she only wanted him to stop hitting and abusing her and was perfectly fine continuing the sexual aspect of the encounter. The record shows otherwise.

The standard of review for assessing the sufficiency of the evidence to support a criminal conviction is "highly deferential." (*People v. Lochtefeld* (2000) 77 Cal.App.4th 533, 538.) Our task is to "'"examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence[.]"'" (*People v. Alexander* (2010) 49 Cal.4th 846, 917.) "Although we must ensure the evidence is reasonable, credible, and of solid value," we must keep in mind "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.]" (*People v. Jones* (1990) 51 Cal.3d 294, 314.) "'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment . . . .' Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)

3

Rape is defined as sexual intercourse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another." (Pen. Code, § 262, subd. (a)(1).) It occurs "when, during apparently consensual intercourse, the victim expresses an objection and attempts to stop the act and the defendant forcibly continues despite the objection." (*In re John Z.* (2003) 29 Cal.4th 756, 760.) In that situation, "'it is immaterial at what point the victim withdraws her consent, so long as that withdrawal is communicated to the male and he thereafter ignores it.'" (*Id*. at p. 762.)

Here, the record shows Sarah initially agreed to have sexual intercourse with appellant. However, when he began punching, hitting, choking and biting her, she adamantly and repeatedly told him to stop. She did not consent to having rough sex with appellant, let alone sex which entailed this level of violence. Given the circumstances of the encounter and the injuries Sarah sustained, the jury could reasonably find that, by telling appellant to stop, she was not just telling him to halt the physical abuse. Rather, she wanted him to stop the act of intercourse altogether, because his excessive violence had completely extinguished her romantic flame. There is substantial evidence to support the jury's finding in that regard. Therefore, we reject appellant's challenge to the sufficiency of the evidence.

II

Appellant also claims the court violated his due process rights by instructing the jury pursuant to CALJIC No. 10.60 that, in order to support a finding of guilt on the alleged sex offenses, the victim's testimony need not be corroborated by other evidence. However, the California Supreme Court has upheld the constitutionality of CALJIC No. 10.60, finding it does not accord greater significance to the victim's testimony or dilute the prosecution's burden of proof. (*People v. Gammage* (1992) 2 Cal.4th 693, 700-702.) As a lower appellate court, we are bound by that decision. (*Auto*

4

*Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  Therefore, the giving of CALJIC No. 10.60 is not cause for reversal.

DISPOSITION

The judgment is affirmed.

BEDSWORTH, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

ARONSON, J.